UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
PHILADELPHIA INDEMNITY INS. CO. as
subrogee of NIAT REALTY CORP.,

                    Plaintiff,

-against-

AMAZON.COM, INC. and AMAZON.COM
LLC,

                    Defendants/Third-Party
                    Plaintiffs,

-against-

A & K SUSHI CORP.,

                      Third-Party Defendant.
---------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-03115 (DRH)(AKT)

**APPEARANCES:**

**For Plaintiff:**
Bowitch & Coffey, LLC
17 Elk Street
Albany, New York 12207-1014
By:    Daniel W. Coffey, Esq.

**For Defendants:**
Marshall Dennehey Warner Coleman & Goggin, P.C.
105 Maxess Road, Suite 303
Melville, New York 11747
By:    Mark J. Volpi, Esq.

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
By:    W. Brendan Murphy

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff") brought this action against Defendants Amazon.com Inc. and Amazon.com LLC ("Amazon") to recover damages resulting from an allegedly defective blender that caused property damage to Plaintiff's subrogor, Niat Realty Corp. ("Niat Realty"). Plaintiff seeks to hold Amazon liable as a seller under theories of strict liability, negligence, and breach of warranty. Presently before the Court is Amazon's motion for summary judgment dismissing Plaintiff's claims.[1]

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Amazon operates an online marketplace where, in addition to the products it retails itself, more than a million third-party sellers list products for sale. (Amazon's R. 56.1 Stmt. [ECF No. 77-1] ¶ 1; Wright Decl. [ECF No. 77-4] ¶ 8.) In order to sell products on the marketplace, third-party sellers must assent to the Amazon Services Business Solutions Agreement ("BSA"), which includes, *inter alia*, Amazon's fulfillment terms and allows a seller to avail themselves of Amazon's services. (Wright Decl. ¶ 10; Pl.'s R. 56.1 Resp. [ECF No. 77-22] ¶ 58.) One such service is payment processing for sellers using the Amazon marketplace. (Amazon's R. 56.1 Resp. [ECF No.77-25] ¶ 30.) Third-party sellers can also elect to partake in Amazon's Fulfillment by Amazon ("FBA") service, which "provides third-party sellers access to Amazon's logistics network." (Wright Decl. ¶¶ 19-20.)

---

[1] The parties have agreed to bifurcate the issue of liability because, if Amazon's motion is granted, the case would be dismissed and there would be no need to proceed with additional discovery. The parties represented that they have completed the discovery necessary for the instant motion for summary judgment. (ECF Nos. 75, 76.)

Third-party defendant A & K Sushi Corp. ("A & K Sushi"), a sushi restaurant, was a tenant at a strip mall owned by Plaintiff's subrogor, Niat Realty, in the Hamlet of Wantaugh, New York. (Pl.'s R. 56.1 Resp. ¶ 49.) On April 30, 2016, Daniel Kim of A & K Sushi purchased a blender "via www.amazon.com" (the "blender"). (Amazon's R. 56.1 Stmt. ¶ 3; Pl.'s R. 56.1 Resp. ¶ 51.) "Third-party sellers, not Amazon, developed the product detail page content for the blender that Mr. Kim purchased." (Amazon's R. 56.1 Stmt. ¶ 15.)

Mr. Kim paid $199.89 for the blender by credit card, which Amazon collected. (Pl.'s R. 56.1 Resp. ¶¶ 22-23.) "Amazon generally charges third-party sellers a referral fee of 15% for kitchen products sold on Amazon; Amazon charges additional service fees for third-party sellers who use the FBA logistics service." (Amazon's 56.1 Resp. ¶ 27.) Thus, Amazon paid itself $41.59 for its fees and remitted the balance of $158.30 to Glantop. (Pl.'s R. 56.1 Resp. ¶¶ 22-24.) Glantop, or Guangzhou Glantop E-Business Co., Ltd., is a Chinese company that sells products on Amazon's online marketplace. (Pl.'s R. 56.1 Resp. ¶¶ 2, 18; Wright Decl. ¶ 4.) After placing his order, Mr. Kim received an email from Amazon confirming the payment and shipment of the blender. (Pl.'s R. 56.1 Resp. ¶ 37.) The email confirmation noted that the blender was "[s]old by Glantop." (*Id*. ¶ 38.)

Glantop assented to Amazon's BSA in May 2015, (*Id*. ¶ 58,) and at some point thereafter decided to utilize Amazon's FBA service for the blender, "whereby Amazon agreed to warehouse the subject blender, pick up Glantop blenders that are ordered, ship Glantop blenders to the customer who purchased them as well as provide customer service." (*Id*. ¶ 29.) The FBA terms in the BSA contain multiple provisions to the effect that third-party vendors, in this case Glantop, retain title to their products while Amazon stores those products on the third-party

vendors' behalf. (BSA [ECF No. 77-6] §§ F-3.3, F-6.2, F-7.3, F-15.) The BSA also states that the seller of a product will provide an "accurate and complete" product description. (*Id.* § S-1.1.)

Amazon received the blender on or about April 11, 2016 at its fulfillment center in Petersburg, Virginia. (Pl.'s R. 56.1 Resp. ¶¶ 6, 19.) Amazon did not inspect or test the blender after receiving it. (Amazon's R. 56.1 Stmt. ¶ 9.) After Mr. Kim placed the order for the blender, Amazon shipped the blender to Mr. Kim using two-day shipping on May 1, 2016,[2] "so Mr. Kim would have received the blender no sooner than May 3, 2016." (Pl.'s R. 56.1 Resp. ¶ 52.) Amazon placed the blender in an "'Amazon' box which had 'Amazon's' name on the exterior of said shipping box." (*Id.* ¶ 21.)

Amazon contends it did not have title to the blender at any time, citing to the BSA; however, Plaintiff argues that "there is no such thing as a 'title' for a blender" and that Amazon had title to the blender for the two weeks that the blender was stored at Amazon's fulfillment center in Petersburg, Virginia. (Amazon's R. 56.1 Stmt. ¶ 6; Pl.'s R. 56.1 Resp. ¶ 6.)

On May 12, 2016, a fire occurred at A & K Sushi. (Pl.'s R. 56.1 Resp. ¶ 53.) Plaintiff contends that the blender was defective and caused the fire. While it is unclear who manufactured the blender, the parties agree that the blender came to Amazon from Glantop.[3] The

---

[2] "When an order is placed for the seller's product, the fulfillment center retrieves the product from the seller's inventory, places it in a shipping container (or applies a shipping label to the product, if its packaging is suitable for shipping), and delivers it to a shipping carrier such as UPS." (Wright Decl. ¶ 19.)

[3] Plaintiff contends that Glantop manufactured the blender, (Pl.'s R. 56.1 Resp. ¶ 18), however Amazon says that the "identity of the blender's manufacturer is unknown." (Amazon's R. 56.1 Resp. ¶ 18). Plaintiff cites to Amazon's First Supplemental Answers to Plaintiff's First Set of Interrogatory Demands ("Interrogatory Responses") and Amazon's Rule 30(b)(6) deposition transcript in support of its contention that Glantop manufactured the blender, however neither document supports that proposition. In response to an interrogatory asking "if [Amazon] did not manufacture the [blender] [] state whether or not [Amazon] had a contract with the manufacturer," Amazon responded that Glantop assented to the BSA "as a third-party seller" and that Amazon "does not directly impose requirements on manufacturers." (Interrogatory Responses [ECF No. 77-14], 2-3.) The Rule 30(b)(6) deposition transcript merely establishes that Guagzhou is a manufacturing city in China, not that Glantop as a company is a manufacturer. (Wright Dep. Tr. [ECF No. 77-3] at 42:14-19.)

parties also agree that Amazon did not design or manufacture the blender. (Pl.'s R. 56.1 Resp. ¶ 4.)

## LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on

"mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## DISCUSSION

I. *The Parties' Arguments*

The Complaint sets forth three causes of action against Amazon: strict products liability and negligence for any damage allegedly caused by the blender at issue and breach of warranty for making "certain express and implied warranties" about the blender. (Compl. [ECF No. 2] ¶¶ 30–46.)

In its motion for summary judgment, Amazon argues that it cannot be held liable under any of Plaintiff's theories for the damage allegedly caused by the blender because Plaintiff cannot establish that Amazon manufactured, distributed, or sold the blender. (Defs.' Mem. in Supp. [ECF No. 77-9] at 7.) Amazon contends that it is merely an online marketplace where

third parties, such as Glantop, sell their products. Even if Amazon can be liable in tort, it argues that Plaintiff's claims are barred by the Communications Decency Act because its claims "are essentially that Amazon should not have published Glantop's offer or should have otherwise policed its contents." (Defs.' Mem. in Supp. at 18.)

In its opposition, Plaintiff argues that Amazon was within the "distribution chain" for the blender and is well placed to influence manufacturers of defective products. (Pl.'s Mem. in Opp. [ECF No. 77-23] at 13.) Plaintiff also argues that Amazon may be held liable for negligence because it did not perform a credit check or secure insurance from Glantop, and for breach of warranty because "Amazon warrantied that the blender was 100% brand new and high quality and that 'excellent customer service' was guaranteed." *Id.* at 17.

II.     *Strict Products Liability*

Both Plaintiff and Amazon cite to the numerous cases around the country, in both state and federal courts, on the issue of whether Amazon can be held strictly liable for defects in the products that consumers purchase from third-party vendors through Amazon's online marketplace. While many courts that initially considered the issue found in Amazon's favor, some more recent cases have reached different results, with appeals on a few of these cases still pending. Indeed, this is a developing area of law, as evidenced by the supplemental authorities submitted by both parties since this motion was filed in May 2019.

Given that New York law applies in this case, of all the cases that Plaintiff and Amazon cite to, the most relevant one for purposes of this decision is *Eberhart v. Amazon.com, Inc.* 325 F. Supp. 3d 393 (S.D.N.Y. 2018), a case with nearly identical facts, and the only case dealing with this issue that applies New York law. In *Eberhart*, the court considered the same central question as the one at issue here: "Is an 'online marketplace' such as Amazon subject to strict

products liability?" *Eberhart*, 325 F. Supp. 3d at 396-97. Because that question had not yet, and still has not, been answered by the New York Court of Appeals, the *Eberhart* court, sitting in diversity jurisdiction as this Court does, predicted how the New York Court of Appeals would decide the issue.

The *Eberhart* court began with a settled proposition of New York law: "a manufacturer of defective products…may be held strictly liable for injuries caused by its products, regardless of privity, foreseeability or due care." 325 F. Supp. 3d at 397 (citing *Finerty v. Abex Corp.*, 27 N.Y.3d 236, 241, 32 N.Y.S.3d 44 (2016)). Strict liability extends to "certain sellers, such as retailers and distributors," however, for any "manufacturer, retailer or distributor of a defective product, strict liability applies only to those entities that are within the distribution chain." *Id*. (citing *Sukljian v. Charles Ross & Son Co.*, 69 N.Y.2d 89, 95, 511 N.Y.S.2d 821 (1986); *Finerty*, 27 N.Y.3d at 241-42, 32 N.Y.S.3d 44) (internal quotations omitted).

The plaintiff in *Eberhart*, like the one here, purchased a product from a third-party vendor through Amazon.com. And as with the case at hand, the third-party vendor in *Eberhart* participated in Amazon's Fulfilment by Amazon service. Thus, the same terms and conditions that apply to Glantop's relationship with Amazon applied in *Eberhart*. The *Eberhart* court granted summary judgment in Amazon's favor, finding that Amazon could not be strictly liable because it never took title to the product at issue, a coffeemaker. *Eberhart*, 325 F. Supp. 3d at 398. The *Eberhart* court found that, rather than a distributor, "Amazon is better characterized as a provider of services." *Eberhart*, 325 F. Supp. 3d at 399.

Nonetheless, Plaintiff argues that Amazon can be held liable as an entity in the "distribution chain". Plaintiff heavily relies on the recent New York Court of Appeals decision in *Finerty v. Abex Corp.*, a case also relied upon by the *Eberhart* court, in support of its argument.

In so arguing, Plaintiff appears to assume that Amazon is a seller or distributor. Based on this assumption, Plaintiff goes on to conclude that Amazon is liable for the damage caused by the blender at issue in this case. While it is undisputed that "a manufacturer, wholesaler, distributor or retailer who sells a product in a defective condition is liable for injury which results from the use of the product," *Tyminskyy v. Sand Man Bldg. Materials, Inc.*, 168 A.D.3d 1118, 1119, 92 N.Y.S.3d 409, 411 (N.Y. App. Div. 2019), Plaintiff seems to have overlooked the more critical threshold inquiry of whether Amazon can even be placed in that category of sellers such that it can be held strictly liable.

The *Eberhart* court, also analyzing the *Finerty* case and the contours of a "distribution chain," concluded that "Amazon was not within the [product]'s chain of distribution such that Amazon could be considered a 'distributor' subject to strict liability." *Eberhart*, 325 F. Supp. 3d at 397. The court there found that Amazon's failure to take title to the product at issue placed it outside the chain of distribution. 325 F. Supp. 3d at 398; *see also* N.Y. U.C.C. Law § 2-106 (defining "sale" as "the passing of title from the seller to the buyer for a price"); Black's Law Dictionary (11th ed. 2019) (defining "sale" as "The transfer of property or title for a price" and "distributor" as "A wholesaler, jobber, or other manufacturer or supplier that sells chiefly to retailers and commercial users"). As the BSA makes clear, Amazon at no point took title to the blender. Thus, Plaintiff's argument that Amazon was within the distribution chain is unavailing.

Plaintiff further contends that "Amazon was at the top of the chain of distribution and was 'in the best position to further the public policy considerations underlying the doctrine of strict products liability.'" (Pl.'s Mem. in Opp. at 13 (citing *Godoy v. Abamaster of Miami, Inc.*, 302 A.D.2d 57, 63, 754 N.Y.S.2d 301 (2003).). The quoted language from the *Godoy* case, however, applies to "the distributor or importer closest to the manufacturer." As has already been

established, Amazon is not a distributor, and the identity of the manufacturer remains unknown. Given that Amazon does not know who the manufacturer is, it is not in a position to influence it. Further, as the *Finerty* court made clear, just because a party might have the ability to exert pressure on a manufacturer does not mean that it is necessarily best placed to do so. *Finerty*, 27 N.Y.3d 236 at 242-43, 32 N.Y.S.3d 44 (finding that Appellate Division erred in concluding that manufacturer's parent company could be subject to strict liability because it could exert pressure on subsidiary manufacturer).

Plaintiff also argues that other online retailers, such as Overstock.com and QVC, have been held liable for products sold through their websites. The cases that Plaintiff cites, however, are inapplicable to the situation here. In the case involving Overstock.com, *Ybarra v. Overstock.com*, the court dealt solely with the summary judgment motion of defendant International Caravan, from whom Overstock.com had purchased the product at issue and resold it to the plaintiff. *Ybarra v. Overstock.com*, 2010 U.S. Dist. LEXIS 150266 (S.D. Cal. Feb. 1, 2010). Because the decision was on International Caravan's motion, the court did not consider Overstock.com's role in the sale of the alleged defective product. The case regarding QVC, *Green v. Wing Enters. Inc., et al.*, is similarly unavailing. *Green v. Wing Enters. Inc., et al.*, 2015 U.S. Dist. LEXIS 156978 (D. Md. Nov. 20, 2015). In that case, the court considered defendants Wing Enterprises and QVC's motions for summary judgment in connection with a defective Wing Enterprise ladder that QVC advertised on television and online. That issue there was whether QVC could be liable for statements it made about the ladder in its advertisements, not whether QVC could be considered a seller or distributor of the ladder.

Finding the reasoning in *Eberhart* persuasive, this Court concludes that Amazon is entitled to summary judgment on Plaintiff's strict liability claim.

### III. Negligence

Plaintiff argues that Amazon can also be held liable under a theory of negligence for contracting with Glantop without conducting a credit check or securing evidence of insurance and allowing Glantop to list an allegedly defective blender on Amazon's website. "It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff." *Pulka v. Edelman*, 40 N.Y.2d 781, 782, 390 N.Y.S.2d 393 (1976). As with strict liability, the *Eberhardt* court considered this issue and found that "Because Amazon did not manufacture, sell, or otherwise distribute the allegedly defective coffeemaker to Eberhart, it owed no duty to him with respect to that product." 325 F. Supp. 3d at 400 (citing *Townley v. Emerson Elec. Co.*, 269 A.D.2d 753, 702 N.Y.S.2d 728, 729 (N.Y. App. Div. 4th Dep't 2000). The same is true here—Amazon did not owe Plaintiff (or Mr. Kim, the actual purchaser of the blender) a duty with respect to the allegedly defective blender. Accordingly, summary judgment is granted to Amazon on Plaintiff's negligence claim.

### IV. Breach of Warranty

As with Plaintiff's strict liability and negligence claims, Plaintiff's breach of warranty claim fails because Amazon did not manufacture or sell the blender at issue. *See Spallholtz v. Hampton C.F. Corp.*, 294 A.D.2d 424, 424, 741 N.Y.S.2d 917 (2002) ("It is well settled that 'liability may not be imposed for breach of warranty or strict products liability upon a party that is outside the manufacturing, selling, or distribution chain.'") (internal citations omitted). Thus, Amazon's motion for summary judgment is granted as to Plaintiff's claim for breach of warranty.

V. *Communications Decency Act*

Amazon argues that even if New York law supported liability, Plaintiff's claims are barred by the Communications Decency Act because they are based on Amazon's publication of Glantop's product offers. Plaintiff does not address this argument in its opposing papers. Given the Court's conclusions above with respect to Plaintiff's claims for strict liability, negligence, and breach of warranty, it is unnecessary to address this issue.

## CONCLUSION

For the foregoing reasons, Amazon's motion for summary judgment is granted as to Plaintiff's claims for strict liability, negligence, and breach of warranty. Amazon's claim for contribution against A & K Sushi is therefore dismissed. Accordingly, the Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      December 4, 2019

        s/ Denis R. Hurley
        Denis R. Hurley
        United States District Judge